UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JAMES RILEY, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|   vs. | ) CAUSE NO. 2:12-cv-340-WTL-WGH |
| | ) |
| BOSTON SCIENTIFIC CORPORATION, | ) |
| | ) |
|   Defendant. | ) |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the Defendant's motion for summary judgment (dkt. no. 36). The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the following reasons.

**I.    STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not

required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

The facts taken in the light most favorable to the Plaintiff, James Riley,[1] are as follow.

Boston Scientific Corporation ("BSC") is a worldwide developer and manufacturer of medical devices. Mr. Riley was hired by BSC in 1991 to work as a research and development technician in BSC's Spencer, Indiana facility; he was approximately thirty-eight years old at the time. In October 2007, Mr. Riley was promoted to a senior production supervisor and began working in the operations department.

BSC's Spencer facility utilizes the Components Verification System ("the CV System") in order to ensure the quality of its medical devices. Specifically, the CV System ensures that the correct components, including, among others, the correct label and appropriate directions, are on the medical device. If the CV System detects an error, it "locks up" and the device cannot be processed until the discrepancy is resolved. Once the system is locked, only certain BSC employees can unlock it—production supervisors, manufacturing engineers, and quality engineers—with an individualized username and password. Before entering their username and password, these individuals are to investigate the issue. If they determine that the components are all correct, they can enter their username and password to unlock the CV System so that the order can be processed. If there is an error with the components, a hold is placed on the order.

Product builders are not given CV System usernames and passwords in the ordinary course of business; however, product builders' supervisors are able to request that a username

---

[1] It appears to the Court that while employed at Boston Scientific Corporation, Mr. Riley went by the name "Jim."

and password be given to them so that they are able to unlock the CV System themselves. While no such request had ever been denied, at the time Mr. Riley was employed with BSC fewer than five product builders had their own CV System usernames and passwords.

In December 2011, Jennylynn Burris, a product builder, repeatedly requested that Mr. Riley unlock the CV System for her because she could not locate her own supervisor for it to be unlocked. Mr. Riley did so several times. Thereafter, in mid-December 2011, Mr. Riley wrote his CV System username and password on a post-it-note and gave it to Ms. Burris. He did so because he had to attend a meeting and wanted Ms. Burris to be able to unlock the CV System because she could not find anyone else to unlock it. Mr. Riley informed his supervisor, Grant Echols, and a production supervisor, Richard Groner, that he gave Ms. Burris his password. He gave Ms. Burris specific instructions on how and when to use the password and also told her to inform him if she did, in fact, use the password. Ms. Burris, however, did not use the password that day.

On January 13, 2012, while Mr. Riley was in Boston for training, his password was used to unlock the CV System. As a result of this incident, BSC investigated the use of Mr. Riley's CV System username and password while he was out of town. Stephanie Sparks, BSC's Human Resources ("HR") Business Partner, was told that Mr. Riley had given his CV System username and password to Ms. Burris. Mr. Riley admitted this during an interview with Ms. Sparks and Kristy Fallon, another HR Business Partner. Ms. Burris also later confirmed that she used Mr. Riley's password on January 13, 2012.

As a result, Ms. Sparks and Ms. Fallon recommended that Mr. Riley's employment be terminated because sharing his CV System password violated several BSC policies; Mr. Echols accepted this recommendation. Mr. Riley was informed of his termination on January 20, 2012,

during a meeting with Mr. Echols and Ms. Fallon. Ms. Burris was also terminated for using a username and password to unlock the CV System without authorization and falsifying a device record. The device record was falsified because the history of the product showed that Mr. Riley—not Ms. Burris—performed the unlock function.

Mr. Riley then filed a charge of discrimination with the Equal Employment Opportunity Commission alleging that he was terminated due to his age. In the charge, Mr. Riley alleged that the individual who had terminated him committed the same policy violation for which he was fired. Mr. Riley clarified in his deposition that this allegation referred to Mr. Echols. Specifically, on January 6, 2012, Mr. Echols gave Mr. Riley a password—"Echols"—to access certain HR Excel documents for end-of-year evaluations and compensation purposes. Without this password, Mr. Riley could not have accessed the documents.

Mr. Riley then filed this suit on November 20, 2012.

### III. DISCUSSION

Mr. Riley alleges that he was terminated because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. Under the ADEA, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensations, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To survive a motion for summary judgment on an ADEA discharge claim, a plaintiff must present evidence of intentional discrimination through either the direct or indirect method. *See Oest v. Ill. Dep't. of Corr.*, 240 F.3d 605, 611 (7th Cir. 2001); *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012). Mr. Riley argues that he can satisfy his prima facie case using either method. The Court will begin with the indirect method.

4

## A. The Indirect Method

To avoid summary judgment under the indirect method, a plaintiff must offer evidence that 1) he belongs to a protected class; 2) his performance met his employer's legitimate expectations; 3) he suffered an adverse employment action; and 4) a similarly situated employee not in his protected class received more favorable treatment. *Brummett v. Sinclair Broad. Grp. Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). Once the plaintiff has established his prima facie case, the burden shifts to the employer to present a legitimate and non-discriminatory reason for the employment action. *Id.* On such a showing, the burden then shifts back to the plaintiff to show that the employer's proffered reason is a pretext for discrimination. *Id.*

Typically, the Court would examine each of the above-mentioned prongs to determine if Mr. Riley could establish a prima facie case.[2] However, for the purposes of this ruling, the Court will "skip over the initial burden-shifting of the indirect method and focus on the question of pretext." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 885 (7th Cir. 2012). Therefore, the Court assumes, without deciding, that Mr. Riley could establish a prima facie case of age discrimination. *See, e.g.*, *Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553, 556 (7th Cir. 2001) (skipping the prima facie case analysis because the plaintiff failed to present evidence that the defendant's reason for terminating him was pretext).

BSC argues that it had a legitimate, non-discriminatory reason for terminating Mr. Riley's employment; namely, that he violated a number of BSC policies when he provided Ms. Burris with his personal CV System username and password. *See* Def.'s Br. at 15 ("Plaintiff's

---

[2] BSC argues that Mr. Riley "cannot make out a *prima facie* case of age discrimination because he cannot establish (a) that his performance met the Company's legitimate expectations or (b) that the Company treated similarly-situated employees under 40 more favorably." Def.'s Br. at 13.

conduct undermined an important quality control system that may have jeopardized the quality of the medical devices that BSC produces and the health and safety of those patients who will ultimately receive such medical devices."). Mr. Riley argues that this reason pretextual. In order to show pretext, Mr. Riley must show that BSC's "ostensible justification for its decision is unworthy of credence. [He] may make the requisite showing by providing evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge." *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800 (7th Cir. 2014) (internal citations and quotation marks omitted). To this end, Mr. Riley makes several, ultimately unconvincing, arguments for why BSC's stated reason for his termination is pretextual.

First, Mr. Riley argues that it was Mr. Echols who made the decision to terminate him and argues that BSC has "offered conflicting stories regarding the identity of the decision maker in this case." Pl.'s Br. at 26. In support, Mr. Riley cites to one of BSC's Interrogatory Responses. Interrogatory Number Eight requested the following: "Please list the names, job titles, current addresses and phone numbers, dates of employment, and reason(s) for departure (if applicable) *for each and every person* involved in the decision to terminate Riley's employment." Dkt. No. 51-12 at 8 (emphasis added). BSC then gave the requested information for eight individuals, including Mr. Echols. It appears, therefore, that Mr. Riley scoffs at BSC for not identifying Mr. Echols as the "ultimate" decision maker. The Court, however, finds no conflict or "shifting rationale" in BSC's response. The Interrogatory clearly asked for "each and every person involved in the decision"; the fact that Mr. Echols made the ultimate decision does not change the fact that the other seven identified individuals may have been involved in the investigation into his conduct and/or recommended that he be terminated.

6

Mr. Riley then argues that Mr. Echols—who made the ultimate decision to terminate him—is not credible because he did not initially admit that he had given a password to Mr. Riley in January 2012 so that Mr. Riley could access certain HR documents. While true that Mr. Echols was inconsistent in his answers, *compare* dkt. no. 51-2 at 80 (denying giving Mr. Riley a password) *with* dkt. no. 51-13 at 6 (admitting that he gave Mr. Riley a password), Mr. Echols has been consistent with his reasons for terminating Mr. Riley: that he violated BSC's policies when he gave his own CV System username and password to Ms. Burris without authorization. *See* dkt. no. 51-2 at 11 (noting that Mr. Riley was terminated because he "had provided his user name and password to be used by someone else to unlock a medical device work order, which ultimately falsified the information contained within the device history record"). This is consistent with the reason Mr. Riley himself believed he was terminated, *see* dkt. no. 51-1 at 95 ("They told me that the—allowing someone else to use my password was the reason [for termination]."), and others who were involved in the investigation into Mr. Riley's conduct and/or recommended that he be terminated, *see* dkt. no. 36-1 at 3 (noting that the recommendation that Mr. Riley's employment be terminated "was based solely on Mr. Riley's admission that he shared his CV System login credentials[.]").

Next, Mr. Riley argues that BSC has offered conflicting stories regarding Mr. Riley's replacement and that this, too, is evidence of pretext. Robert Gill is allegedly the person who assumed Mr. Riley's duties as senior production supervisor; he was hired in December 2011 and was in his late-twenties or early-thirties at the time. Mr. Riley first notes that Mr. Gill was not identified in BSC's Interrogatory Responses. Interrogatory Number Sixteen asked the following: "State whether any individual replaced Plaintiff and/or assumed any of his job duties and responsibilities upon or soon after his termination . . ." Dkt. No. 51-12 at 16. In response, BSC

7

identified three individuals who were hired in April 2012 as production supervisors or senior production supervisors; Mr. Gill was not listed. BSC argues that it did not list Mr. Gill because he was hired as a production supervisor in December 2011, prior to Mr. Riley's termination. Mr. Echols, however, in his deposition, indicated that he thought Mr. Gill did replace Mr. Riley. *See* dkt. no. 51-12 at 35. Despite this alleged conflict regarding Mr. Riley's replacement, BSC has been consistent with its reasons for terminating Mr. Riley. Even if it has been less than sure of who his replacement was, the Court does not agree that this suggests that its reason for terminating Mr. Riley was a lie.

Next, Mr. Riley argues that Ms. Burris is not similarly situated to him. The Court disagrees. Ms. Burris was terminated for using the password Mr. Riley provided; Mr. Riley was terminated for providing the password to Ms. Burris. Both were terminated for unauthorized conduct, either for using a password without authorization or giving a password without authorization. The Court agrees with BSC that both terminations arose out of the same operative facts and for similar misconduct. The fact that BSC argues as such in its brief does not support Mr. Riley's pretext argument.

Finally, Mr. Riley argues that BSC has "add[ed] on to the number of alleged policies he violated. Defendant identifies the Standards of Employee Conduct Policy, Quality Systems Training Policy, Information Asset Protection Policy, Global Communications Policy, and the Electronic Communications Policy as the policies to which Riley allegedly violated." Pl.'s Br. at 27-28. Accordingly, Mr. Riley argues that this "addition" suggests pretext; however, Mr. Riley does not explain how BSC has "added" them on. Nevertheless, during Mr. Echols' deposition, he was asked if he recalled whether Mr. Riley's conduct violated these policies; he responded that he did not recall, except for the Information Asset Policy, to which he stated that Mr. Riley's

8

conduct did violate the policy "[b]y providing a user name and password." Dkt. No. 51-2 at 84. The Court concurs with BSC that "[t]he fact that Echols could not say [nearly two years after the fact] whether or not Riley's password sharing violated certain policies (which were never presented to Echols for review during the deposition) does not provide a basis for characterizing BSC's reasons" for termination as pretextual. BSC's Reply at 16.

In all, Mr. Riley has failed to present sufficient evidence suggesting that the reason BSC terminated him—for providing his CV System username and password to a product builder without authorization—was pretextual. Thus, in order to survive summary judgment, Mr. Riley will have to satisfy the direct method.

### B. Direct Method

As indicated above, Mr. Riley also argues that he can satisfy his prima facie case via the direct method. The Seventh Circuit has explained that the direct method

> can be proved through direct evidence or circumstantial evidence. Direct evidence requires that the employer admit its discriminatory intent (e.g., the "smoking gun" case). The far more common case relies on circumstantial evidence, which allows the trier of fact to *infer* intentional discrimination by the decisionmaker. Circumstantial evidence typically includes (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination. Circumstantial evidence must point directly to a discriminatory reason for the employer's action. At bottom, as we have recently emphasized, a plaintiff seeking to survive summary judgment must produce enough evidence that a rational jury could conclude that the employer took the adverse action against the plaintiff because he is a member of a protected class.

*Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 776-77 (7th Cir. 2013) (internal citations and quotation marks omitted). Mr. Riley argues that he has provided a "convincing mosaic" of

9

suspicious timing and more favorable treatment being given to younger BSC employees in order to satisfy his burden under the direct method. The Court disagrees.

First, Mr. Riley argues that Mr. Echols "knew [he] was the oldest production supervisor and also knew that production supervisors had the authority to allow product builders to have access to user names and passwords to unlock the line[.]" Pl.'s Response at 28. The problem for Mr. Riley is that BSC "has—and uniformly enforces—a protocol for assigning credentials to product builders based on recognized business needs." BSC's Reply at 18. In writing down his password on a post-it-note, Mr. Riley did not follow BSC's policy; if he wanted Ms. Burris to have a password, he needed to submit a request, and receive permission to do so. *See* dkt. no. 36-5 (explaining that production supervisors can *request* that CV System usernames and passwords be given to their product builders). Terminating Mr. Riley for not following the proper procedures in order for Ms. Burris to obtain her own username and password to unlock the CV System is not "selective enforcement" of BSC's protocol.

Mr. Riley also argues that Mr. Echols admitted to providing a password to Mr. Riley; in other words, he argues that Mr. Echols committed the same policy violation as he did but was not terminated. As noted above, Mr. Echols gave Mr. Riley a password—"Echols"—to access certain HR documents so Mr. Riley could perform end-of-the-year tasks. BSC accepts this fact as true for summary judgment purposes; however, it argues that the two men did not commit the same policy violation. Specifically, BSC notes that Mr. Echols did not give Mr. Riley his CV System password; rather, the password given to Mr. Riley was to access certain planning documents that Mr. Riley was authorized, and expected, to utilize as part of his job. Importantly, the password that Mr. Riley was given "did not relate to quality control." BSC's Br. at 11. The Court agrees, therefore, that Mr. Echols did not commit the same violation as Mr. Riley.

Similarly, Mr. Riley also argues that "a reasonable fact finder could conclude that Echols [sic] actions violated the ADEA when he knowingly sat silent as to his knowledge and his previous acceptance of Riley proving the password to Burris." Pl.'s Br. at 29. Mr. Riley claims that when he provided his CV System password to Mr. Burris, he informed Mr. Echols of this fact. Accepting this as true, it is unclear to the Court how this supports an inference that Mr. Echols later terminated Mr. Riley *because of his age*. The Court disagrees with Mr. Riley that the fact that Mr. Echols made the decision to terminate Mr. Riley a month after he allegedly was informed of the violation would lead a reasonable jury to infer that he did so because of Mr. Riley's age. In fact, "nothing in this mosaic of evidence [that Mr. Riley has presented] supports the inference that [BSC's] apparent wish to terminate [Mr. Riley] was motivated by [his] age." *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1054 (7th Cir. 2006).

The closest that Mr. Riley comes is in arguing that when his alleged replacement, Mr. Gill—who was in his late-twenties or early-thirties at the time—was hired in December 2011, Mr. Echols was looking to move Mr. Riley out of the production supervisor position. Around December 2011, it appears that Mr. Echols was interested in transferring Mr. Riley to a different job within BSC. *See* dkt. no. 51-15 (discussing the "Jim Riley option"). Specifically, Mr. Echols was exploring the possibility of moving Mr. Riley to the engineering department due to his experience; Mr. Echols noted that this would have been a lateral move and was not because he was displeased with Mr. Riley's performance as a production supervisor. *See* dkt. no. 51-13 at 25-27. Again, the Court disagrees that a reasonable jury could conclude that because Mr. Echols was contemplating a lateral move for Mr. Riley at the same time Mr. Gill was hired, he later terminated Mr. Riley's employment because of his age.

In all, the Court agrees with BSC that Mr. Riley has failed to present sufficient evidence

11

from which a reasonable jury could conclude that it was more likely than not that age was a motivating factor in Mr. Riley's termination.

## IV. CONCLUSION

For the foregoing reasons, BSC's motion for summary judgment (dkt. no. 36) is **GRANTED**.

SO ORDERED: 9/17/14

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification